**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANDRE MAURICE WALKER,

    Petitioner,

vs.                                                         Case No.:    3:16-cv-796-J-34MCR
                                                                                        3:07-cr-134-J-34MCR

UNITED STATES OF AMERICA,

    Respondent.

_____

**ORDER**

    This case is before the Court on Petitioner Andre Maurice Walker's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1; § 2255 Motion) and Supporting Memorandum (Civ. Doc. 17; Memorandum).[1] Walker pled guilty to one count of being a felon in possession of a firearm. (See Crim. Doc. 30; Plea Agreement). On January 22, 2009, the Court determined that Walker was an armed career criminal under 18 U.S.C. § 924(e) and sentenced him to a term of 151 months in prison. (See Crim. Doc. 51; Judgment).[2] Walker raises a single claim: that the Court incorrectly sentenced him under the Armed Career Criminal Act (ACCA) in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). The United States has responded (Civ. Doc. 18; Response), and Walker has replied (Civ. Doc. 21; Reply). The Court has

---

[1]     Citations to the record in the underlying criminal case, United States v. Andre Maurice Walker, No. 3:07-cr-134-J-34MCR, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-796-J-34MCR, will be denoted as "Civ. Doc. __."

[2]     The Court sentenced Walker below § 924(e)'s 15-year mandatory minimum because he qualified for a substantial assistance reduction. (See Crim. Docs. 49, 50). The Eleventh Circuit Court of Appeals affirmed Walker's conviction and sentence in United States v. Walker, 363 F. App'x 722 (11th Cir. 2010). On May 11, 2011, this Court further reduced Walker's term of imprisonment to 130 months pursuant to Fed. R. Crim. P. 35(b). (Crim. Doc. 65).

1

also considered Walker's Notice of Supplemental Authority. (Civ. Doc. 22; Notice of United States v. Hart, 684 F. App'x 834 (11th Cir. 2017)). Thus, the matter is ripe for review.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[3], the Court has determined that a hearing is not necessary to resolve the merits. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing is not required when the petitioner asserts allegations that are contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[4] For the reasons below, Walker's § 2255 Motion is due to be denied.

## I.     The ACCA and Johnson

Pursuant to 18 U.S.C. § 922(g), a person convicted of being a felon in possession of a firearm is ordinarily subject to a maximum term of imprisonment of 10 years. Under the ACCA, however, that person is subject to an enhanced mandatory minimum sentence of 15 years in prison if he has three or more prior convictions for a violent felony or a serious drug offense, or both. 18 U.S.C. § 924(e)(1). The term "serious drug offense" includes

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law….

---

[3]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.
[4]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

18 U.S.C. § 924(e)(2)(A)(ii). At the time of Walker's offense conduct and sentencing, the term "violent felony" included "any crime punishable by imprisonment for a term exceeding one year" that

> (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)      is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another.</u>

18 U.S.C. § 924(e)(2)(B) (emphasis added). Subsection (i) of this provision is referred to as the "elements clause," the first nine words of subsection (ii) are referred to as the "enumerated clause," and the rest of subsection (ii), which is emphasized above, is referred to as the "residual clause." Mays v. United States, 817 F.3d 728, 730-31 (11th Cir. 2016).

In Johnson v. United States, the Supreme Court held that the residual clause was unconstitutionally vague. 135 S. Ct. at 2557-58, 2563. However, the Supreme Court made clear that the elements clause and the enumerated clause remained unaffected. Id. at 2563. Later, in Welch v. United States, 136 S. Ct. 1257 (2016), the Supreme Court held that Johnson applies retroactively on collateral review.

For a prisoner to successfully challenge his ACCA sentence based on Johnson, he must prove "more likely than not" that reliance on the residual clause led the sentencing court to impose the ACCA enhancement. Beeman v. United States, 871 F.3d 1215, 1220-22 (11th Cir. 2017), cert. denied, 139 S. Ct. 1168 (2019).

> Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a Johnson violation. That will be the case only (1) if the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by Johnson) to qualify a prior conviction as a violent

3

> felony, and (2) if there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense.

Id. at 1221. "If it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause." Id. at 1222.

Whether the sentencing court relied on the residual clause is a "historical fact," which is determined by reference to the state of affairs that existed at the time of sentencing. See id. at 1224 n.5. Thus, court decisions made afterward holding that a particular offense does not qualify under the elements clause or the enumerated offense clause "cast[ ] very little light, if any, on th[is] key question of historical fact." Id. A prisoner can establish that the sentencing court relied on the residual clause in two ways. First, the prisoner can point to "direct evidence: comments or findings by the sentencing judge indicating that the residual clause was relied on and was essential to application of the ACCA in that case." Id. at 1224 n.4. Alternatively, absent direct evidence, there will

> sometimes be sufficient circumstantial evidence to show the specific basis of the enhancement. For example, there could be statements in the PSR [Presentence Investigation Report], which were not objected to, recommending that the enumerated clause and the elements clause did not apply to the prior conviction in question and did not apply to other prior convictions that could have served to justify application of the ACCA. Or the sentencing record may contain concessions by the prosecutor that those two other clauses do not apply to the conviction in question or others.

Id. A prisoner may also circumstantially prove that the ACCA sentence depended on the residual clause "if the law was clear at the time of sentencing that only the residual clause would authorize a finding that the prior conviction was a violent felony." Id. at 1224 n.5 (emphasis added). However, if "'the evidence does not clearly explain what happened …

4

the party with the burden loses.'" Id. at 1225 (quoting Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001)).

## II. Timeliness

Before reaching the merits, the Court addresses the United States' argument that Walker's § 2255 Motion is untimely. Response at 1, 3. The United States asserts that Walker's § 2255 Motion is untimely because "[s]ection 924(e)'s definition of a serious drug offense is entirely unchanged by Johnson" and "Walker has three previous convictions for serious drug offenses." Response at 4. According to the United States, the three serious drug offenses consist of two prior convictions for possession of cocaine with intent to sell and one prior conviction for trafficking cocaine, each under Florida law. Id. Walker does not dispute that his two convictions for possession of cocaine with intent to sell are serious drug offenses. See Memorandum at 3-4. However, Walker devotes most of his Memorandum to arguing that his prior conviction for trafficking cocaine no longer qualifies as a serious drug offense. See Memorandum at 3-11.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), there is a one-year statute of limitations for a federal prisoner to file a motion to vacate, set aside, or correct sentence. 28 U.S.C. § 2255(f). The limitations period runs from the latest of four possible trigger dates. Id. Walker invokes only § 2255(f)(3)'s trigger date. § 2255 Motion at 7. Under § 2255(f)(3), a prisoner may file a motion to vacate within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Walker contends that the § 2255 Motion is timely because he filed it within one year of the Supreme Court's decision in Johnson,

5

which the Supreme Court held in Welch to be retroactively applicable on collateral review. § 2255 Motion at 7.

The Eleventh Circuit's discussion in Beeman about how to apply the statute of limitations is instructive. 871 F.3d at 1219-21. In Beeman, the prisoner filed a § 2255 motion raising three arguments:

> First, he contended that the Johnson decision invalidated his ACCA sentences because when he was sentenced in 2009 his Georgia conviction for aggravated assault would have qualified as a violent felony under the residual clause of the ACCA. Second, he pointed out that his aggravated assault conviction was not a violent felony under the enumerated offenses clause because assault is not included in that list of crimes. And third, he argued that a conviction under the Georgia aggravated assault statute does not now qualify as a violent felony under the elements clause. In making that argument about the elements clause he relied heavily on the Supreme Court's 2013 decision in Descamps v. United States, 570 U.S. 254, 133 S. Ct. 2276, 186 L.Ed.2d 438 (2013), which is one in a line of Supreme Court decisions describing how federal courts should determine whether an offense qualifies as a predicate offense under the ACCA's enumerated offenses and elements clauses. See Mathis v. United States, 579 U.S. ––––, 136 S. Ct. 2243, 195 L.Ed.2d 604 (2016); Descamps, 133 S. Ct. 2276; Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254, 161 L.Ed.2d 205 (2005); Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990).

Beeman, 871 F.3d at 1218.

The Eleventh Circuit determined that Beeman's § 2255 motion was timely to the extent he raised a Johnson claim, but that it was untimely to the extent he raised a Descamps claim. Id. at 1220. The Eleventh Circuit explained that

> [a] Johnson claim and a Descamps claim make two very different assertions. A Johnson claim contends that the defendant was sentenced as an armed career criminal under the residual clause, while a Descamps claim asserts that the defendant was incorrectly sentenced as an armed career criminal under the elements or enumerated offenses clause.

Id. Under § 2255(f)(3), a prisoner may bring a claim based on Johnson within one year of that decision because Johnson announced a newly recognized right that applies

6

retroactively on collateral review. Id. at 1219 (citing Welch, 136 S. Ct. at 1268). However, "the Descamps decision cannot qualify as a triggering date under § 2255(f)(3)" because "Descamps did not set out a newly recognized right." Id. at 1220. "As a result, if [Beeman's] § 2255 motion raised a Johnson claim, that claim was timely, but any other claim the motion raised – including a Descamps claim – was untimely." Id.

The court determined that Beeman had raised both types of claims in his § 2255 motion. Id. "He focused largely on an argument that the 2013 Descamps decision meant that his Georgia conviction for aggravated assault could no longer qualify as a violent felony under the elements clause. That is obviously a Descamps claim." Id. But to the extent Beeman argued that the district court relied on the residual clause to classify his Georgia conviction for aggravated assault as a violent felony, and that Johnson entitled him to be resentenced, "[t]hat sounds like a Johnson claim." Id. Thus the court ruled that Beeman's Descamps claim was time-barred but that his Johnson claim was not. Id.

Like Beeman, Walker raises both a Johnson claim and a non-Johnson claim. Walker argues that his "sentence was enhanced under the [ACCA's] residual clause, subjecting him to a mandatory minimum term of 15 years' imprisonment," and thus that his ACCA sentence must be vacated in light of Johnson. § 2255 Motion at 4. "That sounds like a Johnson claim." Beeman, 871 F.3d at 1220. But Walker also argues at length that his prior conviction for trafficking cocaine no longer qualifies as a serious drug offense under a proper application of the categorical approach. Memorandum at 3-11. In doing so, he relies extensively on Descamps and its line of cases, including Mathis v. United States, 136 S. Ct. 2243 (2016). Id. at 4-6. This is not a Johnson claim.

Consistent with Beeman, the Court determines that Walker's § 2255 Motion is timely

7

to the extent he raises a Johnson claim, i.e., that the Court applied the ACCA enhancement based on the now-rejected residual clause. However, Walker's § 2255 Motion is time-barred to the extent he argues that his prior conviction for trafficking cocaine no longer qualifies as a serious drug offense. The Supreme Court's decision in Johnson, which only concerned the ACCA's residual clause, did not open a portal for Walker to challenge whether his drug trafficking conviction still qualifies as a serious drug offense.[5]

### III. Discussion

Walker is not entitled to relief from his ACCA sentence because he has not carried his burden under Beeman. Nothing in the PSR, the sentencing transcript (Crim. Doc. 56; Sentencing Tr.), or the legal landscape at the time of sentencing suggests that Walker's sentence depended on an application of the residual clause. In other words, Walker has not shown that the Court "relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause," or the serious drug offense alternative, to identify three prior convictions as qualifying predicate offenses under the ACCA. Beeman, 871 F.3d at 1221.

#### A. The sentencing record sheds no light on the role, if any, of the residual clause.

The record does not reflect whether the Court relied on the residual clause to impose the ACCA enhancement. Walker's PSR listed eleven prior felony convictions, all under Florida law. PSR at ¶ 9. Those prior convictions included the following: (1) burglary

---

[5] Although Walker's argument that his trafficking conviction no longer qualifies as a serious drug offense is time-barred, the Court believes it necessary to explain why the conviction qualified as Walker's third serious drug offense at the time of sentencing. The Court will address this issue below.

8

of a conveyance, id. at ¶ 33, (2) attempted burglary of a conveyance, id. at ¶ 29, (3) burglary of a structure, id. at ¶ 30, (4) burglary of a structure, id. at ¶ 31, (5) third-degree grand theft, id. at ¶ 41, (6) possession of a controlled substance, id. at ¶ 42, (7) possession of a controlled substance, id. at ¶ 43, (8) trafficking cocaine, id. at ¶ 48, (9) aggravated fleeing and attempting to elude and possession of a controlled substance, id. at ¶ 49, (10) possession of cocaine with intent to sell, id. at ¶ 51, and (11) possession of cocaine with intent to sell, id. at ¶ 55.

Neither the Probation Office nor the Court identified which prior convictions were considered to be ACCA predicates. Walker acknowledges this fact, stating that "[t]he PSR and sentencing transcript did not reveal which prior convictions the Court relied on for Mr. Walker's ACCA enhancement." Reply at 2 n.2. Notably, neither the Probation Office nor the Court identified whether the elements clause, the enumerated clause, the residual clause, or the serious drug offense provision were considered in determining the applicability of § 924(e). Indeed, there was no reason for the Court to do so because Walker did not contest that he was an armed career criminal. Sentencing Tr. at 4-5. Thus, the record does not reflect what role, if any, the residual clause played in Walker being sentenced under the ACCA.

### B. Based on the state of the law in January 2009, Walker's conviction for trafficking cocaine qualified as his third serious drug offense.

In addition to the absence of record evidence that the Court relied on the residual clause, Walker's 1997 conviction for trafficking cocaine would have qualified as a serious drug offense given the state of the law at the time of sentencing. See PSR at ¶ 48; (Civ. Doc. 17-1; Trafficking Record at 1-2). This conviction, along with Walker's two convictions for possession of cocaine with intent to sell, which he does not dispute are serious drug

9

offenses, would have given Walker "at least three other prior convictions that could have qualified" without applying the residual clause. Beeman, 871 F.3d at 1221.

Florida, like other states, has a three-tiered scheme for punishing drug-related offenses.

> Under Florida law, those three tiers are the following: (1) possession of any amount of a controlled substance, Fla. Stat. § 893.13(6)(a); (2) possession with intent to distribute a controlled substance, § 893.13(1)(a); and (3) trafficking in cocaine by possession of 28 grams or more of the drug, § 893.135(1)(b). Under this third tier, trafficking in cocaine is further delineated according to the amount of drugs that the defendant possessed, and the sentence imposed increases accordingly.

United States v. James, 430 F.3d 1150, 1154 (11th Cir. 2005), overruled on other grounds by Johnson, 135 S. Ct. 2551. Florida's drug trafficking statute does not require proof of actual trafficking, but infers an intent to distribute whenever the defendant possesses 28 grams or more of cocaine. Id. at 1254, 1255; see also United States v. Madera-Madera, 333 F.3d 1228, 1232 (11th Cir. 2003) (under Georgia's three-tiered scheme for punishing drug offenses, Georgia's drug trafficking statute also infers an intent to distribute based on the quantity of drugs).

Walker's conviction for trafficking cocaine fell under the third and most serious tier. At the time Walker committed the trafficking offense, the statute provided as follows:

> Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, as described in s. 893.03(2)(a)4., or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture, commits a felony of the first degree, which felony shall be known as "trafficking in cocaine." If the quantity involved:
> 
> a. Is 28 grams or more, but less than 200 grams, such person shall be sentenced pursuant to the sentencing guidelines and pay a fine of $ 50,000.

§ 893.135(1)(b)1, Fla. Stat. (1997).[6] Indeed, the information filed in state court alleged that Walker actually or constructively possessed between 28 grams and 200 grams of cocaine. Trafficking Record at 1.

In the 2005 James decision, the Eleventh Circuit examined the same statute under which Walker was convicted, see 430 F.3d at 1153 (quoting section 893.135(1)(b), Fla. Stat.), and held that a conviction for trafficking based upon possessing 28 grams or more of cocaine qualifies as an ACCA serious drug offense, id. at 1154-56.[7] In explaining why trafficking by possession qualifies as a serious drug offense, the court reasoned:

> We hold that Florida's drug trafficking statute also "infers an intent to distribute once a defendant possesses a certain amount of drugs." Madera-Madera, 333 F.3d at 1232.... Florida's drug trafficking statute necessarily infers an intent to distribute once a defendant possesses 28 grams or more.
>
> Furthermore, it is not necessary that the Florida statute under which James was convicted include as an element of the offense an intent to manufacture or distribute cocaine in order for James to be sentenced under the ACCA, as the district court ruled. The language of the Florida statute need not exactly match the ACCA's definition of a "serious drug offense." See Madera–Madera, 333 F.3d at 1233 (explaining that the wording of the Georgia statute need not exactly match the wording of the Sentencing Guidelines because the Sentencing Commission did not define drug trafficking by its elements, but rather by the type of conduct prohibited). Rather, the question is whether the Florida statute falls within the ACCA's definition of a "serious drug offense." The definition broadly includes any offense "involving" the manufacture, distribution, or possession with intent to manufacture or distribute. 18 U.S.C. § 924(e)(2)(A)(ii). This "involving" language makes clear that the term "serious drug offense" may include even those state offenses that do not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute. Therefore, the Florida statute falls within the broad definition of a "serious drug offense."
>
> Finally, James was convicted of trafficking, the most serious drug offense in Florida. To hold that this conviction does not qualify as a "serious drug

---

[6] The current version of the statute is substantially the same.
[7] In James, the quantity of drugs possessed was between 200 grams and 400 grams of cocaine, not 28 grams to 200 grams. But based on James's reasoning, this distinction makes no difference. "Florida's drug trafficking statute necessarily infers an intent to distribute once a defendant possesses 28 grams or more." Id. at 1155.

11

> offense" for purposes of the ACCA enhancement would create an anomaly. See Madera–Madera, 333 F.3d at 1233–34 (discussing the potential anomalous result if the defendant's trafficking offense did not qualify for enhancement under the Sentencing Guidelines). If James had been convicted in Florida of a lesser offense, such as possession with intent to distribute, he would qualify for enhanced sentencing under the ACCA. However, as the case stands now, James would not qualify for such enhanced sentencing because the Government charged James with—and James pled guilty to—a more serious trafficking offense. The district court recognized this anomaly at sentencing noting that, under its ruling, James's plea to a greater offense had ensured that he would be treated more—not less—leniently under the ACCA. Such an anomalous result would thwart the ACCA's purpose. See United States v. Pope, 132 F.3d 684, 691 (11th Cir. 1998) (noting that the ACCA was intended to provide additional punishment for habitual offenders who Congress found to be responsible for the disproportionate number of violent crimes).

James, 430 F.3d at 1154-55.

Like the defendant in James, Walker was previously convicted of drug trafficking in violation of Florida Statute section 893.135(1)(b) for possessing 28 grams or more of cocaine. "Florida's three-tiered scheme recognizes that someone who is in possession of [28 grams or more] of cocaine intends to manufacture and distribute, and thereby, 'traffic' those drugs. Moreover, federal law permits an inference of intent to distribute from a defendant's possession of a significantly large quantity of drugs." Id. at 1155-56 (citing United States v. Bain, 736 F.2d 1480, 1486 (11th Cir. 1984)). "Accordingly, [Walker's] conviction for trafficking in cocaine by possession of between [28 and 200] grams of cocaine falls within the ACCA's definition of a 'serious drug offense.'" Id. at 1156.

Walker argues that his conviction for trafficking cocaine is not a serious drug offense because the conduct element of section 893.135(1)(b) is indivisible, and therefore the Court must presume that Walker committed only the least culpable act, i.e., purchasing. Memorandum at 4-11. In turn, Walker argues that the act of purchasing falls outside the scope of the ACCA's definition of a state-law serious drug offense because purchasing

does not correspond to "manufacturing, distributing, or possessing with intent to manufacture or distribute" a controlled substance. 18 U.S.C. § 924(e)(2)(A)(ii).

In making this argument, Walker relies extensively on United States v. Shannon, 631 F.3d 1187 (11th Cir. 2011). In Shannon, the Eleventh Circuit held that the defendant's prior conviction under Florida's trafficking statute was not a "controlled substance offense," as defined in the Sentencing Guidelines' career offender provision, because the Shepard documents did not establish the act for which he was convicted. Shannon, 631 F.3d at 1189. Thus, the court was required to presume that the defendant committed only the least culpable act, i.e., purchasing. Id. In turn, the court noted that the act of purchasing fell outside the scope of U.S.S.G. § 4B1.2(b), which defines a "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

Shannon was decided in 2011, two years after Walker's sentencing hearing, and thus was not part of the legal landscape when the Court sentenced Walker on January 22, 2009. Regardless, Shannon is distinguishable from Walker's case in at least one meaningful way. The court in Shannon emphasized that the Shepard documents did not reveal the particular act for which the defendant was convicted, requiring the court to presume that the defendant did nothing more than purchase cocaine. 631 F.3d at 1189; see also id. at 1190-94 (Marcus, J., concurring) (writing that the modified categorical approach applied to section 893.135, and underscoring the need for the government to

13

present all available Shepard documents). Here by contrast, the charging instrument states that Walker's trafficking offense was based on the actual or constructive possession, not the purchase, of 28 grams or more of cocaine – the same offense for which the defendant was convicted in James. See Trafficking Record at 1. Thus, under the reasoning of Shannon and James, Walker's trafficking conviction would still have qualified as a serious drug offense.[8]

The Court recognizes that last year in Cintron v. U.S. Att'y Gen., the Eleventh Circuit held that the six alternative methods of committing drug trafficking (i.e., selling, purchasing, manufacturing, delivering, bringing into the state, or possessing) "were means, not elements, so that § 893.135(1)(c)1. was indivisible." 882 F.3d 1380, 1385 (11th Cir. 2018).[9] In doing so, Cintron undermined James and Shannon insofar as those earlier opinions assumed or implied that the modified categorical approach was applicable to section 893.135(1)(b) or (c).

It remains to be seen whether drug trafficking by purchasing would still qualify as a serious drug offense under the ACCA, but the Court need not resolve that question. For purposes of a § 2255 motion seeking relief under Johnson, the point of reference is the state of the law at the time of sentencing, which in Walker's case was January 22, 2009. Beeman, 871 F.3d at 1224 n.5. At that time, as James illustrates, Florida's drug trafficking statute was considered divisible, such that a court could examine Shepard documents to

---

[8] Shannon is arguably distinguishable from Walker's case in a second way: Shannon involved the career offender guideline's definition of a controlled substance offense, whereas Walker's case involves the ACCA's definition of a serious drug offense. The two terms are similar but not identical. As the Eleventh Circuit explained in United States v. White, the definition of a serious drug offense is broader than the definition of a controlled substance offense because of the ACCA's use of the word "involving." 837 F.3d 1225, 1233-35 (11th Cir. 2016).

[9] Because section 893.135(1)(b) contains the same six alternative means of commission, Cintron presumably applies to that subsection as well.

discern the basis of a defendant's prior conviction. And as the charging document in this case reflects, Walker was convicted of drug trafficking based on possessing 28 grams or more of cocaine, Trafficking Record at 1, which is materially the same crime that the Eleventh Circuit deemed to be a serious drug offense in James, 430 F.3d at 1154-56. Thus, at the time of his sentencing in January 2009, Walker's 1997 conviction for trafficking cocaine qualified as his third serious drug offense.

### C. Based on the state of the law in January 2009, Walker's convictions for burglary of a structure could also have qualified as violent felonies.

Finally, it is undisputed that at the time of sentencing, Walker also had two prior state of Florida convictions for burglary of a structure. Although he argues that those convictions no longer qualify as ACCA predicates, Memorandum at 2-3, his contention is unavailing. Case law at the time of Walker's sentencing did not make clear "that only the residual clause would authorize a finding that" Walker's two convictions for burglary of a structure were violent felonies. Beeman, 871 F.3d at 1224 n.5. In United States v. Weeks, the Eleventh Circuit rejected "the erroneous view that a prior conviction under Florida's burglary statute, Fla. Stat. § 810.02, can qualify as a 'violent felony' only under the ACCA's residual clause, and never under its enumerated-offenses clause." 711 F.3d 1255, 1262 (11th Cir. 2013), abrogated by United States v. Esprit, 841 F.3d 1235 (11th Cir. 2016). The court wrote: "Although Florida's burglary statute facially encompasses both generic and non-generic burglaries, a conviction under the statute can still qualify as a generic burglary if the charging documents or other Shepard-approved sources show that the offense involved unlawful entry into a building or structure." Id. at 1262-63 (citing, inter alia, United States v. Matthews, 466 F.3d 1271, 1274-75 (11th Cir. 2006)). See also United States v.

15

Bennett, 472 F.3d 825, 832-34 (11th Cir. 2006) (allowing the use of undisputed facts in the PSR to make the generic burglary finding).

Walker's Plea Agreement and PSR stated that he had been convicted twice for burglary of a structure under Florida law. Plea Agreement at 16; PSR at ¶¶ 30, 31. Walker did not contest either conviction. Thus, at the time of sentencing, it is possible the burglary convictions qualified as generic burglaries to the extent they involved entry into a building or structure.[10] As Weeks and Matthews illustrate, the law was not clear in 2009 that the burglary convictions qualified as violent felonies exclusively under the residual clause.

In Esprit, decided seven years after Walker was sentenced, the Eleventh Circuit reversed course, holding that Florida's burglary statute is indivisible and broader than generic burglary, and thus is not a violent felony under the enumerated clause. 841 F.3d at 1240-41. However, in Beeman the Eleventh Circuit cautioned against looking to decisions issued after a petitioner's sentencing that rule out application of the elements clause or the enumerated clause. Beeman, 871 F.3d at 1224 n.5. "What we must determine is a historical fact: was [Walker] in 2009 sentenced solely per the residual

---

[10] The record is still ambiguous as to whether Walker merely entered the curtilage of a building (in which case the offenses would not have been generic burglaries) or if he entered a building or structure (in which case the offenses would have been considered generic burglaries). See Matthews, 466 F.3d at 1274-75 (noting that Florida's definition of a "structure" includes both the building and its curtilage, and suggesting that burglary of a structure is generic burglary if Shepard documents show that the defendant entered a building or structure). The Eleventh Circuit has recognized that where the record reflects only that the defendant was convicted of burglary of a structure, the result could go either way, qualifying as a generic burglary to the extent it involved entry into a building and qualifying as a violent felony under the residual clause to the extent it involved entry into the curtilage. United States v. Bargeron, 435 F. App'x 892, 894 (11th Cir. 2011).

But where, as here, "'the evidence does not clearly explain what happened … the party with the burden loses." Beeman, 871 F.3d at 1225 (quoting Romine, 253 F.3d at 1357). The lack of clarity cuts against Walker in the § 2255 context. "If it is just as likely that the sentencing court relied on the … enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause." Id. at 1222.

16

clause?" Id. Later-issued decisions "cast[ ] very little light, if any, on th[is] key question of historical fact" and thus "would not answer the question before us." Id.[11] Indeed, the Eleventh Circuit has affirmed the denial of relief under Johnson where a petitioner's prior burglary conviction was considered a generic burglary at the time of sentencing, but later-decided precedents meant the conviction no longer qualified as such under the modified categorical approach. E.g., Ziglar v. United States, 757 F. App'x 886, 890-91 (11th Cir. 2018); Perez v. United States, 730 F. App'x 804, 810 (11th Cir. 2018). Given the state of the law and the record at the time of sentencing, Walker has not shown that the Court considered his convictions for burglary of a structure to be violent felonies only under the residual clause.[12]

### D. Conclusion

Walker has not established that the residual clause "actually adversely affected the sentence he received." Beeman, 871 F.3d at 1221 (citing In re Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016)). Given the record and the state of the law in January 2009, the evidence does not show, more likely than not, that the Court turned to the residual clause to sentence Walker as an armed career criminal.

## IV. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This

---

[11] The principle articulated in Footnote 5 of Beeman, i.e., that a court should look to the legal landscape at the time of sentencing, not later decisions expounding on the application of the modified categorical approach, is a corollary to Beeman's holding that a § 2255 motion based on Johnson is not a portal for raising a Descamps claim or other non-Johnson claim. Beeman, 871 F.3d at 1219-21.

[12] To the extent Walker argues that the Court erred by classifying the prior burglary conviction under the enumerated clause, this is a Descamps claim, which is time-barred, not a Johnson claim. See Beeman, 871 F.3d at 1219-21.

17

Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Walker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Andre Maurice Walker's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk is directed to enter judgment in favor of the United States and against Walker, and close the file.

3. If Walker appeals the denial of the petition, the Court denies a certificate of

appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 13th day of June, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner